692 A.2d 1018

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Vinson WASHINGTON Appellant.**

Supreme Court of Pennsylvania.

Argued April 30, 1996.

Decided April 18, 1997.

552

Lee Mandell, Philadelphia, for Vinson Washington.

Catherine Marshall, Anthony V. Pomerantz, Philadelphia, Robert A. Graci, Office of Attorney General, for Com.

Before FLAHERTY, ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

*OPINION*

NIGRO, Justice.

On November 4, 1994, following a jury trial, Appellant Vinson Washington was found guilty of first-degree murder for the killing of Zachary Jackson. The jury returned a verdict of death, and on January 5, 1995, the trial court formally imposed the death sentence. This direct appeal followed. For the reasons presented herein, we affirm the judgment of sentence.

Although Appellant does not challenge the sufficiency of the evidence, this Court is required in capital cases to review the record to determine whether the Commonwealth has established the elements necessary to sustain a conviction for first-degree murder. *See Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g denied,* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). In conducting such a review, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the Commonwealth as verdict winner and determine whether the jury could find every element of the crime beyond a reasonable doubt. *See Commonwealth v. Michael,* 544 Pa. 105, 109, 674 A.2d 1044, 1047 (1996).

To obtain a conviction for first-degree murder, the Commonwealth must prove that a human being was unlawfully killed; that the defendant did the killing; and that the killing was done intentionally. *See* 18 Pa.Cons.Stat. § 2502(a), (d) (1983); *Commonwealth v. Wilson,* 543 Pa. 429, 437, 672 A.2d 293, 297 (1996). Further, the specific intent to kill may be inferred from the defendant's use of a deadly weapon upon a vital part of the victim's body. *See Michael,* 544 Pa. at 109, 674 A.2d at 1047; *Commonwealth v. Bond,* 539 Pa. 299, 305, 652 A.2d 308, 311 (1995).

The relevant facts are as follows. On the evening of December 11, 1993, Appellant and another man, Rasheed Miller, followed the decedent, Zachary Jackson, as he drove

through the streets of West Philadelphia. Jackson, a shopkeeper, had just left his store, and Appellant and Miller believed he was carrying a large sum of money. Jackson eventually stopped at an intersection in response to a red light. At that moment, Miller, who was driving, blocked off Jackson's car. Appellant ordered Jackson out of his car at gunpoint, demanded money, and began frisking Jackson. When Appellant looked away briefly, Jackson tried to flee, but fell when Appellant shot him four times in the lower back and legs. Appellant again tried to search for money, but Jackson fought him off. Appellant then retrieved another gun from his car and shot Jackson once in the abdomen. Appellant and Miller then fled the scene. Jackson died the next day. An eyewitness, Denise Grant, viewed the entire episode.

At approximately 4:30 a.m. on December 31, 1993, Appellant was arrested on a charge unrelated to the instant case. At 2:30 p.m. on December 31, 1993, the police received information from a robbery suspect implicating Appellant and Miller in the Jackson killing. Consequently, at 8:45 a.m. on January 1, 1994, Appellant was transported to the offices of the Homicide Unit for questioning concerning the Jackson case. He was given his *Miranda* warnings and, by 1:55 p.m. that same day, he had confessed to killing Jackson. Miller, who was also being held on unrelated charges, also confessed on January 1, 1994 to his involvement in the case. Further, the weapon Appellant admitted using to shoot Jackson the fifth and final time was later recovered. Ballistics evidence matched this gun to a bullet fragment found in Jackson's body and a cartridge casing found at the scene of the shooting.

This evidence is more than sufficient to demonstrate that Appellant shot Jackson and did so with the specific intent to kill. Thus, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, the jury could have found each element of an intentional killing beyond a reasonable doubt. *See* 18 Pa.Cons.Stat. § 2502(a), (d) (1983); *Wilson*, 543 Pa. at 437, 672 A.2d at 297.

Appellant and Miller were tried jointly.[1] On November 4, 1994, the jury found Appellant guilty of first-degree murder,[2] robbery,[3] criminal conspiracy,[4] and possessing an instrument of crime.[5] After a penalty hearing, the jury found that one aggravating circumstance, that the killing occurred during the perpetration of a felony,[6] outweighed one mitigating circumstance, that Appellant had no significant history of prior criminal convictions.[7] The jury therefore returned a verdict of death, which the trial court formally imposed on January 5, 1995.[8] Appellant then directly appealed to this Court,[9] raising one claim of trial court error and three ineffective assistance of counsel claims.

■ Appellant first argues that the trial court erred in refusing to sever his trial from Miller's.[10] Appellant suggests

1. Miller was convicted of second-degree murder, robbery, criminal conspiracy, and possessing an instrument of crime. He was sentenced to life imprisonment. After the Superior Court affirmed Miller's judgments of sentence, this Court denied allocatur. *See Commonwealth v. Miller*, 449 Pa.Super. 724, 674 A.2d 317 (1995), *appeal denied*, 544 Pa. 655, 676 A.2d 1196 (1996).

2. *See* 18 Pa.Cons.Stat. § 2502(a) (1983).

3. *See id.* § 3701.

4. *See id.* § 903.

5. *See id.* § 907(a).

6. *See* 42 Pa.Cons.Stat. § 9711(d)(6) (Supp.1995).

7. *See id.* § 9711(e)(1) (1982).

8. On the remaining charges, the trial court sentenced Appellant as follows: ten to twenty years imprisonment for robbery, five to ten years in prison for criminal conspiracy, and one to two years imprisonment for possessing an instrument of crime. The sentences were made concurrent to each other but consecutive to any other sentences Appellant was serving. *See* N.T., 1/5/95, at 5.

9. Pursuant to 42 Pa.Cons.Stat. § 9711(h)(1) (Supp.1995) and Pa.R.A.P. 1941.

10. The decision whether to sever the trials of co-defendants is within the sound discretion of the trial court and will not be reversed on appeal absent a manifest abuse of that discretion. *See Commonwealth v. Wharton*, 530 Pa. 127, 142, 607 A.2d 710, 717 (1992). The decisive question is whether Appellant was prejudiced by the trial court's decision. *See Wharton*, 530 Pa. at 142, 607 A.2d at 717–18. The burden is on Appellant to establish such prejudice. *See Commonwealth v. Lambert*, 529 Pa. 320, 331, 603 A.2d 568, 573 (1992).

that he was prejudiced by the admission of Miller's redacted confession because it "contextually implicated" him in the killing and therefore violated *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

In *Bruton,* the U.S. Supreme Court held that the introduction at trial of a non-testifying co-defendant's confession describing the defendant's participation in a crime deprives the defendant of his rights under the Confrontation Clause of the Sixth Amendment. It is well-settled, however, that no *Bruton* violation occurs if the co-defendant's statement is redacted to remove any specific references to the defendant and if a proper limiting instruction is given. *See Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987); *Commonwealth v. Jones,* 542 Pa. 464, 495–96, 668 A.2d 491, 506 (1996). In the instant case, the phrase "the guy with me" was substituted for any reference to Appellant in Miller's statement. Further, the trial court instructed the jury that it was to consider each co-defendant's confession as evidence only against that co-defendant. Thus, the introduction of Miller's statement did not violate *Bruton.*

Despite this, Appellant claims that he suffered prejudice nonetheless because the jury, viewing the redacted confession in light of the other evidence connecting Appellant to the murder, could easily have inferred that the unnamed individual mentioned in the confession was actually Appellant. In other words, Appellant contends that he was prejudiced as the result of a *Bruton* violation occurring through contextual implication.

We realize that contextual implication can impact a defendant's rights under the Confrontation Clause. However, reversible error does not necessarily result from every infringement of a defendant's right to confront witnesses against him. Review under the harmless error standard set forth in *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978) is appropriate in such circumstances. *See Bond,* 539 Pa. at 312, 652 A.2d at 314. Under *Story,* an error is harmless if it could not have contributed to the verdict because the erroneously admitted evidence is merely cumulative of substantially simi-

lar, properly admitted evidence. *See Story,* 476 Pa. at 411, 383 A.2d at 165.

In Appellant's case, even assuming that the admission of Miller's redacted statement violated the dictates of *Bruton,* such error was indeed harmless and did not prejudice Appellant. Any evidence of Appellant's involvement in the murder that could be inferred from Miller's confession was merely cumulative of other, properly admitted evidence indicating his guilt. Appellant's own statement, wherein he confessed to shooting Jackson, was introduced into evidence and was factually indistinguishable from Miller's. Further, the eyewitness, Denise Grant, identified Appellant at trial and gave an account of the attack which was essentially identical to the statements of both Appellant and Miller. And, finally, the ballistics evidence corroborated Grant's testimony and Appellant's confession. Thus, even assuming a *Bruton* violation occurred, it was harmless error in light of the properly admitted evidence clearly establishing Appellant's guilt. *See Commonwealth v. Chestnut,* 511 Pa. 169, 174–75, 512 A.2d 603, 605–06 (1986); *Story,* 476 Pa. at 411, 383 A.2d at 165.

In light of this, and considering the trial court's limiting instruction to the jury, Appellant has failed to demonstrate that he was prejudiced by the denial of his motion to sever. Accordingly, we find no abuse of discretion on the part of the trial court. *See Commonwealth v. Wharton,* 530 Pa. 127, 142, 607 A.2d 710, 717–18 (1992).

Next, Appellant raises three ineffective assistance of counsel claims. To prevail on each of these claims, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness. *See Commonwealth v. Howard,* 538 Pa. 86, 93, 645 A.2d 1300, 1304 (1994).

First, Appellant argues that counsel was ineffective for failing to object when the prosecution "broke redaction" of Miller's confession during closing argument.

A prosecutor's comments do not constitute reversible error unless " 'the unavoidable effect of such comments [was] to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.' " *Bond*, 539 Pa. at 314, 652 A.2d at 315 (quoting *Commonwealth v. D'Amato*, 514 Pa. 471, 490, 526 A.2d 300, 309 (1987)).

Appellant complains initially of the following statement by the prosecution:

> In the statements, beginning with Mr. Miller, he says a guy named Boo tells them there's a furniture store at 54th and Lancaster. It closes at eight. That's [a] black guy about 35 to 40. He['ll] be wearing a black Basalini hat and he closes [h]is store. He has $6,000 in his sock.
>
> So what do they do? They do go to that area, they wait at that store.

N.T., 11/4/94, at 43. Appellant contends that the prosecution's use of the word "they" was an improper reference to Appellant, tying him in to Miller's statement. We disagree. The use of the pronoun "they" was indicative of nothing more than the fact that Miller's statement spoke of two men, Miller and the "guy" with him. As such, the prosecutor's remark was insufficient to prejudice the jury against Appellant.

Second, Appellant complains of the following statement by the prosecutor:

> When Vinson Washington shot the man in the back four times, and then walks up to him with or with the knowledge of or with the participation with Rasheed Miller saying go back and get it, was that a hardness of heart, a cruelty of disposition when he finished the job off? Because if you find that hardness of heart, then you have malice, and if it's malice it's murder.

N.T., 11/4/94, at 49. Upon consideration, we conclude that this remark, like the first, was simply insufficient to prejudice the jurors against Appellant to a degree rendering them incapable of objectively weighing the evidence and returning a true verdict.

Appellant's underlying claim is thus without merit. We note also that the trial court instructed the jury that Miller's statement could be used as evidence only against Miller and that the closing arguments of both prosecution and defense counsel were not to be considered evidence. Thus, even assuming that Appellant's underlying claim had merit, he has failed to demonstrate the requisite prejudice necessary to establish the ineffective assistance of counsel. *See Howard*, 538 Pa. at 93, 645 A.2d at 1304. Accordingly, this claim fails.

■ Next, Appellant suggests that counsel was ineffective for failing to object when Police Officer Joel Fitzgerald testified concerning the description of the shooter that Denise Grant had given him at the scene of the shooting. Appellant contends that this testimony was inadmissible hearsay.

Appellant's claim is without merit. Although Officer Fitzgerald's testimony was hearsay, it was admissible under the excited utterances exception to the hearsay rule. To qualify as an excited utterance, a statement must be

> a spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person had just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties....

*Commonwealth v. Stokes*, 532 Pa. 242, 258, 615 A.2d 704, 712 (1992).

In the instant case, we are convinced that the events witnessed by Grant were clearly unexpected and shocking. Indeed, Officer Fitzgerald commented that when he arrived at the scene, Grant was "in a very excited state. She was—she looked as if her life had passed before her eyes...." N.T., 11/2/94, at 56. We also note that Grant spoke with Officer Fitzgerald only a few moments after the episode occurred.

In light of this, we conclude that Grant's description of the shooter was an excited utterance and was therefore not inadmissible hearsay. *See Stokes,* 532 Pa. at 258, 615 A.2d at 712. Appellant's ineffective assistance claim must therefore fail given that his underlying claim is without merit. *See Howard,* 538 Pa. at 93, 645 A.2d at 1304.

■ Lastly, Appellant argues that counsel was ineffective for not moving to suppress his confession because it was obtained in violation of the "six-hour" rule announced in *Commonwealth v. Davenport,* 471 Pa. 278, 370 A.2d 301 (1977). In *Davenport,* this Court held that an arrestee must be arraigned within six hours of arrest in order "to guard against the coercive influence of custodial interrogation [and] to ensure that the rights to which an accused is entitled at preliminary arraignment are afforded without unnecessary delay." *Davenport,* 471 Pa. at 284, 370 A.2d at 305. If arraignment did not occur within six hours of arrest, any statement by the accused obtained between arrest and arraignment was not admissible at trial. *See Davenport,* 471 Pa. at 286, 370 A.2d at 306.

Later, in *Commonwealth v. Duncan,* 514 Pa. 395, 525 A.2d 1177 (1987), the Court modified the rule, indicating that the crucial consideration was not the time of the arraignment. Rather, the "focus should be upon when the [defendant's] statement was obtained, i.e., within or beyond the six hour period." Thus, since *Duncan,* any statement obtained within six hours of arrest, absent coercion or other illegality, is not to be suppressed on the basis of *Davenport.*

In the instant case, Appellant argues that since he had been in custody for approximately 28 hours prior to the start of questioning on the Jackson killing that his confession to that crime was obtained through "the intrinsically coercive effects of unbroken custody and multiple police interrogatories." Appellant's Br. at 10. To accept this argument would be to ignore the clear import of the facts of this case. Appellant was arrested at 4:30 a.m. December 31, 1993 on an unrelated charge. While being processed on that charge, he was placed

in a holding cell. *See* N.T., 11/3/94, at 74. Then, at 8:45 a.m. on January 1, 1994, he was taken to an interrogation room in the Police Administration Building[11], *see id.* at 73–74, where he gave an inculpatory statement within approximately five hours from the start of questioning.[12] On these facts, we decline to find a violation of the *Davenport–Duncan* rule, which is premised on a desire to avoid the coercive effect of prolonged police interrogation. *See Bond,* 539 Pa. at 308, 652 A.2d at 312; *Davenport,* 471 Pa. at 284, 370 A.2d at 305.

And, in any event, Appellant has failed to establish the prejudice necessary to support his ineffectiveness claim. Denise Grant witnessed the entire course of events surrounding the Jackson shooting and identified Appellant at the trial. Her account of the criminal episode was factually indistinguishable from Miller's statement and was corroborated by the ballistics evidence in the case. Given these factors, it is clear that Appellant has failed to demonstrate that the outcome of the case would have been different but for counsel's inaction. *See Howard,* 538 Pa. at 100, 645 A.2d at 1308 (to establish prejudice, "a defendant is required to show that counsel's ineffectiveness was of such magnitude that the verdict essentially would have been different absent counsel's alleged ineffectiveness"). Accordingly, his ineffectiveness claim fails.

Having concluded that Appellant's claims for relief are without merit, we must affirm the judgment of sentence unless we determine that

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

11. After a thorough review of the record and the briefs in this case, we cannot conclude that Appellant did anything other than languish, unmolested, in his cell until he was removed for questioning on January 1, 1994.

12. Thus, even if one were to conclude that the interrogation of Appellant on the Jackson shooting constituted an arrest on that charge, there was no violation of the *Davenport–Duncan* rule.

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

42 Pa.Cons.Stat. § 9711(h)(3) (Supp.1995).

Upon review of the record, we conclude that the sentence was not the product of passion, prejudice or any other arbitrary factor. Rather, it was based upon evidence properly admitted at trial. We also conclude that the evidence was sufficient to support the jury's finding of one aggravating circumstance, that the killing occurred during the perpetration of a felony. *See id.* § 9711(d)(6). This conclusion is amply supported by Appellant's own statement and by the eyewitness testimony of Denise Grant.

Lastly, we have reviewed Appellant's sentence in light of the sentencing data compiled and monitored by the Administrative Office of the Pennsylvania Courts. *See Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700, *cert. denied,* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984). We conclude that the sentence of death imposed upon Appellant is not excessive or disproportionate.

Accordingly, we affirm the judgment of sentence.[13]

NIX, Former C.J., did not participate in the consideration or decision of this case.

---

13. The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor of Pennsylvania. *See* 42 Pa.Cons.Stat. § 9711(i) (1982).