J. A02034/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DREW RIZZO, | : | No. 60 EDA 2013 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, July 24, 2012,
in the Court of Common Pleas of Bucks County
Criminal Division at No. CP-09-CR-0001450-2012

BEFORE:  FORD ELLIOTT, P.J.E., OTT AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:**FILED SEPTEMBER 17, 2014**

Appellant appeals from the judgment of sentence of 30 days' to 6 months' imprisonment after being convicted following bench trial of driving under the influence (DUI - general impairment), driving under the influence (DUI - high rate of alcohol), careless driving, stop signs and yield signs, and turning movements and required signals.[1]  Finding no error on review, we affirm.

The trial court accurately presented the factual background:

> In the early morning hours of October 25, 2011, Officer Brad Smeltzer of the Morrisville Borough Police Department was patrolling the 400 block of South Pennsylvania Avenue in

---

\* Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3802(a)(1), 3802(b), 3714(a), 3323(b), and 3334(a), respectively.

Morrisville Borough, Bucks County, Pennsylvania. *N.T. 7/19/12, pp. 6-7*. At approximately 12:33 AM, Officer Smeltzer observed a black sedan drive through a stop sign located on the southbound ramp of Route 1 and proceed south on Pennsylvania Avenue. *N.T. 7/19/12, p. 7*. The driver of the vehicle then made a left turn into a parking lot without using the turn signal. *N.T. 7/19/12, pp. 7-8*. The officer thereafter activated his overhead emergency lights and effectuated a traffic stop. *N.T. 7/19/12, p. 8*.

When Officer Smeltzer approached the car, he noticed that the driver of the vehicle, the Defendant, had red, bloodshot, glassy and "heavy-lidded" eyes. *N.T. 7/19/12, p. 9*. An odor of alcohol emanated from the Defendant's vehicle. *Id*. While conversing with the officer, the Defendant admitted to drinking two beers that evening. *N.T. 7/19/12, pp. 9-10*. The Defendant responded slowly to the officer, but did not slur his words. *N.T. 7/19/12, p. 21*.

Officer Smeltzer directed the Defendant to step out of his vehicle and thereafter administered three field sobriety tests. In the first test, the "heel to toe walk," the officer told the Defendant to take six steps forward, six steps back and to count aloud as he did so. The Defendant took four steps, failed to count aloud and was unsteady on his feet. *N.T. 7/19/12, p. 12*. During the second test, the Defendant was instructed to tilt his head back, close his eyes, outstretch his arms and touch the tip of his nose with the tip of his finger. The Defendant touched the bridge of his nose with the middle of his finger. *N.T. 7/19/12, p. 13*. Finally, the Defendant was asked to perform the "one-legged stand test." He was directed to stand on one foot and lift the other foot approximately six inches from the ground and count to nine. The Defendant lifted his foot but had to touch his foot to the ground numerous times. *N.T. 7/19/12, p. 14*. At no point did the Defendant inform the officer that he suffered from any condition that would have prevented him from adequately completing the field sobriety tests. *N.T. 7/19/12,*

*p. 32*. Based upon his observations and the Defendant's performance on all three tests, Officer Smeltzer formed the opinion that the Defendant was incapable of safely operating a motor vehicle. *N.T. 7/19/12, p. 42*.

The Defendant was transported to St. Mary's Medical Center by Officer Justin Bickhardt of the Morrisville Police Department. *N.T. 7/19/12, pp. 44-46*. After arriving at the hospital, the Defendant signed a consent form allowing the hospital staff to draw his blood. *N.T. 7/19/12, p. 46*. In Officer Bickhardt's presence, Thomas Mazzo, a registered nurse, drew the Defendant's blood. *N.T. 7/19/12, pp. 46, 48, 51*. The Defendant's blood was drawn at 1:30 AM on October 25, 2011. *N.T. 7/19/12, pp. 47, 51*; Exhibit C-1. Thereafter, Mr. Mazzo placed the Defendant's patient label on the vials of blood and put the vials into an evidence bag, after which point the evidence bag was sealed. *N.T. 7/19/12, pp. 48, 52*. The Defendant's blood samples were later submitted to the Bucks County Crime Laboratory for analysis. *N.T. 7/19/12, pp. 56, 65*. The Defendant's blood alcohol content was determined to be .105%. No drugs were detected. *N.T. 7/19/12, p. 67*; Exhibit C-3.

Trial court opinion, 2/13/13 at 1-3 (footnote omitted).

Appellant raises the following issues on appeal:

I. Whether the Trial Court's finding of guilt as to Driving Under the Influence, High Rate of Alcohol, was supported by sufficient evidence because the Analyst testified that the test on [appellant]'s blood sample should not be reported based upon the Buck's County Crime Labs' written procedures[?] More specifically, the analyst testified that the written procedures require that the internal standard peak area for [appellant]'s samples and quality control samples must be within twenty-five percent of the average internal standard peak areas of calibrators and that [appellant]'s

samples fell outside of the twenty-five percent limit.

II. Whether the Trial Court's finding of guilt as to Driving Under the Influence, High Rate of Alcohol, was supported by sufficient evidence because the Analyst testified that [appellant]'s blood alcohol content may be as low as 0.077%[?]

III. Whether the Trial Court's finding of guilt as to Driving Under the Influence, High Rate of Alcohol, was supported by sufficient evidence because the Commonwealth failed to develop a sufficient chain of custody for [appellant]'s blood sample[?] More specifically, contrary to the chain of custody documents stating that Officer Smeltzer placed the blood into evidence, Officer Smeltzer testified that he had no interaction or involvement with the blood after it was drawn from [appellant] at the hospital.

IV. Whether the Trial Court erred by allowing Joanne Szpanka to testify that Josh Folger, another analyst with Buck's County Crime Lab, made a typo in drafting the lab[']s procedures over Defense Counsel[']s hearsay objection[?]

V. Whether the Trial Court's finding of guilt as to Driving Under the Influence, High Rate of Alcohol, was against the weight of the evidence because the Analyst testified that the test on [appellant]'s blood sample should not be reported based upon the Buck's County Crime Lab['s] written procedures[?] More specifically, the analyst testified that the written procedures require that the internal standard peak area for [appellant]'s samples and quality control samples must be within twenty-five percent of the average internal standard peak areas of calibrators and that [appellant]'s samples fell outside of the twenty-five percent limit.

VI.  Whether the Trial Court's finding of guilt as to Driving Under the Influence, High Rate of Alcohol, was against the weight of the evidence because the Analyst testified that [appellant]'s blood alcohol content may be as low as 0.077%[?]

VII.  Whether the Trial Court's finding of guilt as to Driving Under the Influence, High Rate of Alcohol, was against the weight of evidence because the Commonwealth failed to develop a sufficient chain of custody for [appellant]'s blood sample[?]  More specifically, contrary to the chain of custody documents stat[ing] that Officer Smeltzer placed the blood into evidence, Officer Smeltzer testified that he had no interaction or involvement with the blood after it was drawn from [appellant] at the hospital.

VIII.  Whether the Trial Court's finding of guilt as to Driving Under the Influence, General Impairment, was against the weight of evidence because the Trial Court as finder of fact improperly found a reliable blood alcohol content which could be consider[ed] in determining whether [appellant] was impaired and the remaining testimony and evidence provided was if insufficient weight to support a conviction[?]

Appellant's brief at 5-6 (footnotes and suggested answers omitted).

Preliminarily, we note a duplication of issues above.  Appellant raises the same core issue at Issues I and V, II and VI, and III and VII.  The only difference is that the former issue is cast as a sufficiency of the evidence claim while the latter issue is cast as a weight of the evidence claim.  We determine that the core issues described at Issues I and V and Issues II and

VI go to the sufficiency of the evidence; consequently, we will not review Issues V and VI because the core issues do not implicate the weight of the evidence. On the other hand, we find that the core issue described at Issues III and VII goes to the weight of the evidence; consequently, we will not review Issue III as sufficiency of the evidence is not implicated.

We will address appellant's Issues I and IV together as they are closely connected. Issue I challenges the sufficiency of the evidence:

> A challenge to the sufficiency of the evidence is a question of law, subject to plenary review. When reviewing a sufficiency of the evidence claim, the appellate court must review all of the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, as the verdict winner. Evidence will be deemed to support the verdict when it establishes each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. The Commonwealth need not preclude every possibility of innocence or establish the defendant's guilt to a mathematical certainty. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Teems*, 74 A.3d 142, 144-145 (Pa.Super. 2013) (citations omitted), *appeal denied*, 79 A.3d 1098 (Pa. 2013), citing *Commonwealth v. Toland*, 995 A.2d 1242, 1245 (Pa.Super. 2010), *appeal denied*, 29 A.3d 797 (Pa. 2011).

Issue IV questions the admission of alleged hearsay evidence. The following principles guide our consideration of whether the trial court erred in its conclusion.

> The admission of evidence is committed to the sound discretion of a trial court and will not be reversed absent an abuse of discretion. Discretion is abused where the law is not applied. Where improperly admitted evidence has been considered by the [fact-finder], its subsequent deletion does not justify a finding of insufficient evidence and the remedy in such a case is the grant of a new trial.

*Commonwealth v. Chamberlain*, 731 A.2d 593, 595 (Pa. 1999) (internal quotations and citations omitted), *cert. denied*, *Chamberlain v. Pennsylvania*, 132 S.Ct. 2377 (2012).

> The term "hearsay" is defined as an out-of-court statement, which is offered in evidence to prove the truth of the matter asserted. Hearsay statements are generally inadmissible unless they fall under an enumerated exception. An out-of-court statement is not hearsay when it has a purpose other than to convince the fact finder of the truth of the statement.

*Commonwealth v. Busanet*, 54 A.3d 35, 68 (Pa. 2012) (internal citations omitted), *cert. denied*, *Busanet v. Pennsylvania*, 134 S.Ct. 178 (2013).

In Issue I, appellant argues that the evidence was insufficient because the BAC result testified to by analyst Joanne Szpanka was unreliable. Specifically, appellant contends that Szpanka contradicted her testimony when she first testified that the result had to conform to a certain threshold stated in the laboratory's standard operating procedure manual ("SOP"), then testified that the SOP actually contained an error. (Appellant's brief at 20-24.) As a corollary to this issue, in Issue IV, appellant also argues that

the trial court erred in admitting Szpanka's alleged hearsay testimony as to how she found out the SOP contained an error. (Appellant's brief at 29-30.)

The SOP for the Bucks County Crime Laboratory provides standards for testing. Specifically, it provides that "the internal standard peak area for all samples and controls must be within 25 percent of the average internal standard peak area of the calibrators." (Notes of testimony, 7/19/12 at 75-76.) Szpanka later testified that this 25 percent figure was a clerical error, and the laboratory utilized a 50 percent figure. (Notes of testimony, 7/20/12 at 5.) She also stated that "[t]he laboratory practice is within 50 percent, and it always has been." (*Id.*) Appellant's BAC result was within 50 percent, but not within 25 percent. (Notes of testimony, 7/20/12 at 4.)

Szpanka testified about this clerical error as follows.

> Q. So according to your lab procedures, you're not to report that result. Correct?
>
> A. Upon reviewing the SOP for the laboratory, it had come to my attention that there is a clerical error --
>
> Counsel for Appellant: Objection.
>
> A. -- in the SOP.
>
> THE COURT: She's answering the question. Overruled.
>
> Counsel for Appellant: I didn't ask where it came to her attention from, Your Honor. Hearsay, Your Honor, that's my objection.

- 8 -

> A.  You put the SOP in front of me.  I read the SOP, turned the SOP to you and the ADA, and said the 25 percent comment was a typographical, clerical error.  Last lab.  The laboratory practice is within 50 percent, and it always has been.

*Id*. at 5.

Szpanka later testified, on re-direct examination, about how this clerical error came about.  She stated that Josh Folger, the person who prepared the SOP, "was using a prior method from another laboratory as a template for his SOP." (*Id.* at 13.)  Counsel for appellant again objected to hearsay.  The trial court permitted Szpanka to testify because it was her understanding of why she was following a different protocol.  (*Id.*)

On appeal, appellant argues that the trial court erred in failing to sustain these hearsay objections.  The trial court concluded that the evidence was not hearsay, and reasoned as follows.

> There is no evidence on the record that the witness's knowledge of the error came from out-of-court statements of a third party.  In any case, the explanation was not being offered for the truth of the matter asserted, i.e. that the error in fact occurred in that fashion.  The import of the testimony was that the written procedural protocol relied upon by the defense contained incorrect information.

Trial court opinion, 2/13/13 at 7.

We agree.  When Szpanka testified that it had come to her attention that there was a clerical error in the SOP, that does not indicate that someone told her about it.  Appellant argues that her language to the effect,

"it had come to my attention," indicates that someone had told her of the error. To the contrary, we find the language "it had come to my attention" suggests that Szpanka discovered the error herself. Had Szpanka testified, "it was brought to my attention," we would agree that that language would indicate that someone told her about the error. As for Szpanka's testimony that Folger was using a prior method from another laboratory as a template for his SOP, this is not an assertion that Folger told her this information. Szpanka may have witnessed Folger preparing the SOP using the other laboratory's template. Moreover, this latter remark was not being offered for the truth of the matter asserted since the origin of the error in the SOP was of no moment. It was the existence of the 25 percent error itself that was critical and Szpanka testified to this as if it were first-hand knowledge and not hearsay. Simply stated, there is no indication in Szpanka's testimony that she was relying on, or repeating, an out-of-court statement by a third party. Issue IV is without merit.

Having found that Szpanka's correction of the clerical error in the SOP was properly admitted, appellant's Issue I can also be found to be without merit. The correct measure for determining appellant's BAC was 50%. On re-direct, the Commonwealth adduced testimony from Szpanka that using the proper parameter of 50%, appellant's BAC was determined to be .105. (Notes of testimony, 7/20/12 at 12-14.) Appellant's argument that the evidence was insufficient using the incorrect 25% measure thus relies upon

an improper predicate to reach a false conclusion. We remind appellant that our standard of review requires us to view the evidence in the light most favorable to the Commonwealth. The Commonwealth produced evidence that the proper measure was 50% and that using that parameter, appellant's BAC was .105. The evidence was sufficient and appellant's Issue I is without merit.

In Issue II, appellant argues that the evidence was insufficient because Szpanka testified that appellant's BAC may be as low as .077%. This is a mischaracterization of Szpanka's testimony.

Here, appellant was convicted of DUI - high rate of alcohol, which provides as follows.

> **(b)** **High rate of alcohol**.--An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(b).

Appellant argues that Szpanka's testimony that appellant's BAC "may be as low as .077%" renders the evidence insufficient to sustain the verdict. (Appellant's brief at 24-27.) The trial court concluded that appellant "mischaracterizes this testimony. [Szpanka] testified that utilization of the *proper procedure* for calculating blood alcohol content would *not* result in a

blood alcohol content of .077%." (Trial court opinion, 2/13/13 at 7 (emphasis in original).) We agree.

On cross-examination, Szpanka testified as follows:

> Q. And a calibration curve, basically, is an equation that allows you to extrapolate a blood/alcohol content?
>
> A. Yes. It's an equation of a line.
>
> Q. Okay. So using the average area of 272,582, you came up -- plugging into the calibration curve, you came up with a result of .0777?
>
> A. Correct.

Notes of testimony, 7/20/12 at 8.

On re-direct examination, Szpanka clarified this testimony. She testified that "[t]he internal standard recovery for this particular alcohol result was 193,393. It was not the average of the calibrators. It was 193,393. And that is how the calculation was done." (*Id.* at 15.) The Commonwealth's attorney further clarified how counsel for appellant reached the .077 number.

> [ADA]: And what [counsel for appellant] was using was the average of the calibrators to get that .077 number. Correct?
>
> A. Yes.

*Id.* at 15-16.

Based on a review of this testimony, we agree with the trial court that appellant's argument that Szpanka testified that appellant's "blood alcohol

content might be .077 percent" is a mischaracterization of the testimony. (Appellant's brief at 26, 36.) Szpanka's testimony was based on a hypothetical situation that appellant's BAC could be .077%. She then testified that in this case, because the actual internal standard recovery value was available, .105% was actually appellant's BAC. This is between the statutory range of .10% and .16%. Accordingly, Issue II is without merit.

As previously noted, we will not be reviewing Issues III, V, and VI. In Issue VII, appellant argues that his conviction for DUI – High Rate of Alcohol was against the weight of the evidence because the Commonwealth failed to establish a sufficient chain of custody for his blood sample. We note our standard of review:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. **Commonwealth v. Widmer**, 560 Pa. 308, 319, 744 A.2d 745, 751-52 (2000); **Commonwealth v. Brown**, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. **Widmer**, 560 Pa. at 319-20, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" **Id.** at 320, 744 A.2d at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another

opportunity to prevail." **Brown**, 538 Pa. at 435, 648 A.2d at 1189.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim **is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence**. **Brown**, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. **Commonwealth v. Farquharson**, 467 Pa. 50, 354 A.2d 545 (Pa.1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Widmer**, 560 Pa. at 321-22, 744 A.2d at 753 (emphasis added).

**Commonwealth v. Clay**, 64 A.3d 1049, 1054-1055 (Pa. 2013).

In its opinion, the trial court identified the correct standard by which it was to assess the weight of the evidence ("so contrary to the evidence as to shock one's sense of justice"). (Trial court opinion, 2/13/13 at 5.) The trial court later provided this analysis on chain of custody:

To establish chain of custody, the Commonwealth need not produce every individual who came into contact with the evidence, nor need it eliminate all possibilities of tampering. Commonwealth v. Rick, 366 A.2d 302 (Pa.Super. 1976). Evidence may be admitted despite gaps in testimony regarding its custody. Commonwealth v. Bruner, 564 A.2d 1277, 1285 (Pa.Super. 1989) (citing Commonwealth v. Hudson, 489 Pa. 620, 414 A.2d 1381 (1980)). Gaps in the chain of custody go to the weight that is to be afforded evidence, not to its admissibility. Commonwealth v. Copenhefer, 553 Pa. 285, 312, 719 A.2d 242, 256 (1998).

The evidence admitted at trial in the instant case established that, after the initial car stop, the Defendant was transported to St. Mary's Medical Center by Officer Bickhardt. N.T. 7/19/12, pp. 44-46. Thomas Mazzo, a registered nurse, drew the Defendant's blood in [the] presence of Officer Bickhardt. N.T. 7/19/12, pp. 46, 48, 51; Exhibit C-1. Mr. Mazzo placed the Defendant's patient label on the vials of blood, placed the vials into an evidence bag and sealed the bag. N.T. 7/19/12, pp. 48, 52. Officer Bickhardt then transported the evidence to the police station where it was secured in evidence. N.T. 7/19/12, p. 48. Lt. Thomas Herron subsequently transported the evidence to the Bucks County Crime Laboratory for purposes of analysis. N.T. 7/19/12, pp. 56, 65. This evidence is clearly sufficient to permit admission of the blood test results. The Defendant's challenge to the sufficiency and weight of the evidence base[d] upon chain of custody is, therefore, without merit.

In challenging the chain of custody, the Defendant relies on Exhibit C-1, the blood alcohol evidence kit form and Exhibit C-2, the laboratory's submission form, which indicate that Officer Smeltzer placed the blood samples in evidence at the police station and not Officer Bickhardt, contradicting Officer Smeltzer['s] testimony that he did not handle the evidence. N.T. 7/19/12 p. 43. This contradiction does not alter the

conclusion that evidence of the blood test analysis was admissible. In Commonwealth v. Seibert, 799 A.2d 54, 61 (Pa.Super.2002), the court held that the fact that the Emergency Room technician did not remember taking the defendant's blood did not preclude admission of the blood test results. The court held that the previously completed, signed, and dated form explaining the performed procedures and corresponding results was sufficient to establish a chain of custody. Commonwealth v. Seibert, 799 A.2d 54, 61, (Pa.Super.2002). In the instant case, the Blood Alcohol Kit Evidence Report, Exhibit C-1, and the Bucks County Crime Laboratory Chain of Custody Report, Exhibit C-2, establish the blood was transferred from the registered nurse who drew the blood to Office[r] Bickhardt. Officer Bickhardt transferred custody of the evidence to Officer Smeltzer, who placed the item into evidence. Under the holding of Seibert, this evidence was sufficient to establish chain of custody. Moreover, even with this gap in the chain of custody, the evidence is still admissible. Commonwealth v. Bruner, supra. As stated above, gaps in the chain of custody go to the weight that is to be afforded evidence, not to its admissibility. Commonwealth v. Copenhefer, supra.

Id. at 8-9.

We find no abuse of discretion in the trial court's review as to the weight of the evidence pertaining to the chain of custody of the blood sample. The court reviewed the chain of custody and addressed appellant's specific complaint. There is no error.

Finally, in Issue VIII, appellant asserts that his conviction for DUI – General Impairment was against the weight of the evidence. The trial court provided the following analysis:

Finally, the Defendant avers that the conviction of Driving Under the Influence – General Impairment was against the weight of the evidence because the court "improperly found a reliable blood alcohol content" in determining whether or not the Defendant was impaired, and that the remaining testimony and evidence was of insufficient weight to support the verdict. As discussed above, the Defendant's blood alcohol content of .105% was valid and admissible. The Defendant's blood alcohol content, considered in conjunction with evidence concerning the Defendant's driving, the officer's observations of the Defendant, and the Defendant's failure to properly perform field sobriety tests is more than sufficient to support the conclusion that the Defendant was incapable of safe driving. His conviction for violating section 3802(a)(1) of the Driving Under the Influence of Alcohol statute was, therefore, proper.

*Id.* at 9-10.

Again, we see no abuse of discretion in the trial court's analysis. The trial court catalogued the several factors leading to its verdict, particularly the valid evidence that appellant's BAC was .105%. There is no error here either.

Accordingly, having found no error in the issues raised on appeal, we will affirm the judgment of sentence.

Judgment of sentence affirmed.

Ott, J. joins the Memorandum.

Strassburger, J. files a Concurring and Dissenting Memorandum.

J. A02034/14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/17/2014