J-S33043-20

2020 PA Super 217


COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                             : PENNSYLVANIA
                                             :
                    v.                       :
                                             :
                                             :
                                             :
KEVIN ROBINSON                               :
                                             :
                  Appellant                  : No. 3114 EDA 2019

Appeal from the Judgment of Sentence Entered August 14, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009186-2017


BEFORE: DUBOW, J., MURRAY, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.                    **FILED SEPTEMBER 04, 2020**

Appellant, Kevin Robinson, appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County after a jury convicted him of third-degree murder, firearms not to be carried without a license, carrying a firearm of the public streets of Philadelphia, and possession of an instrument of crime. Herein, Appellant raises two issues challenging the court's denials of his pre-trial and post-sentence motions seeking DNA testing of a green hoodie sweatshirt he was seen wearing when he committed his crimes. We affirm.

The trial court aptly sets forth the facts and procedural history of the present matter:

_____

[*] Former Justice specially assigned to the Superior Court.

## PROCEDURAL HISTORY

On September 12, 2017, Kevin Robinson [hereinafter "Appellant"] shot Michael Nathaniel Jones (the "decedent") four times in the back as he walked down the 5100 block of Frankford Avenue. The decedent was taken to Temple University by responding officers where he succumbed to his injuries.

On November 30, 2018, Appellant was found guilty by a jury, presided over by the Honorable Rose Marie DeFino-Nastasi, of third-degree murder, firearms not to be carried without a license, carrying a firearm on the public streets of Philadelphia, and possession of an instrument of crime.

On August 14, 2019, Appellant was sentenced to sixteen to thirty-two years imprisonment for firearms not to be carried without a license. No further penalty was imposed for the remaining charges.

On August 22, 2019, Appellant filed a Motion to Modify the Sentence and a Motion for DNA testing pursuant to 42 Pa.C.S. § 9543.1.

On October 4, 2019, Appellant's Motion to Modify the Sentence and Motion for DNA Testing was denied.

On October 31, 2019, Appellant filed a Notice of Appeal to the Superior Court. On December 2, 2019, Appellant filed a Rule 1925(b) Concise Statement of Matters Complained of on Appeal.

## STATEMENT OF FACTS

Police Officer Michael Schaffer [of the Philadelphia Police Department] testified that on September 12, 2017, he was on vehicle patrol when he heard gunshots coming from the 5100 block of Frankford Avenue. Officer Schaffer arrived on location in approximately one minute. Upon arrival, a large crowd was gathered and proceeded to wave down Officer Schaffer near the 1500 block of Dyre Street at the intersection of Frankford Avenue, where Officer Schaffer observed an "unresponsive" male face-down in a pool of blood. Based on the decedent's condition, Officer Schaffer immediately transported him to Temple University

- 2 -

Hospital where he was pronounced dead. N.T., 11/27/2018, at 64-74.

Police Officer Stephen Burgeon testified that on September 12, 2017, he and Officer Kennelly received a radio call reporting gunshots with a description of the suspect as a black male wearing a green hooded sweatshirt. A witness on the scene directed the officers to the alleyway off Dyer Street where the suspect ran. A set of keys and a green hooded sweatshirt with a "PUMA" logo were recovered from the alleyway. N.T. at 83-99.

Saayed Williams testified that he knew the decedent for a few years. The decedent was a friend of his and he knew him as Mizz. Williams was on the corner of Frankford and Dyre on September 12, 2017 when the decedent was shot and killed. He was standing a few feet away from the decedent, who was involved in an argument over drug territory on the block with another male, who then shot the decedent. At trial, Williams denied knowing the identity of the shooter. Williams was then impeached with his signed statement to detectives wherein he identified the Defendant [hereinafter "Appellant"] as the shooter. Williams was also shown a surveillance video which depicts the shooting. Williams is depicted on video within feet of the shooter and can be seen looking directly at him. N.T. at 122-138.

Jay Johnson, a close friend of the decedent, testified that he had seen the Appellant around the neighborhood for a few months prior to the murder. On September 11, 2017, he saw the Appellant in passing wearing the same green hooded sweatshirt with the "PUMA" logo that Appellant can be seen wearing on the 7-Eleven surveillance video. Johnson also identified Appellant on the surveillance video from 7-Eleven, on September 12, 2017, just prior to the murder. Additionally, Johnson testified that Appellant drove a "red, small, crappy car." N.T. at 78-81.

Detective Thorsten Lucke testified as an expert in video recovery and analysis. Detective Lucke retrieved and compiled video footage from the 7-Eleven at the corner of Dyre Street and Frankford Avenue; a Philadelphia pole camera also at the corner of Dyre Street and Frankford Avenue, and a private residence on the 1500 block of Dyre Street.[]

The compilation starts with the video from the camera located in the 7-Eleven store on the corner of Frankford and Dyre Streets.

The video depicts a male wearing a green hooded sweatshirt, with a "PUMA" logo on the front and something dangling off both shoes walking in front of the camera and exiting the store at approximately 10:40 a.m. He is accompanied by another male. The two turn left onto Dyre Street where they come into view on the Philadelphia Police pole camera.[] At approximately 10:45 a.m., a male dressed in the same clothing as seen on Appellant the previous day and on the 7-Eleven surveillance video minutes prior, shoots the decedent and runs. A male in the same clothing then comes into view on the private residence video at 10:45:22 a.m., where he can be seen running into the alley off Dyre Street where a green hooded sweatshirt with a "PUMA" logo and a set of keys were later recovered by the Crime Scene Unit. N.T., 11/28/18, at 7-36.

Officer Edward Fidler, from the Philadelphia Crime Scene Unit, testified that he processed the crime scene. Officer Fidler recovered three fired cartridge casings (FCCs), a lead copper projectile and a lead copper fragment from the shooting scene. He also recovered one green "PUMA" hooded sweatshirt and a set of keys from the alley off Dyre Street. The keys were swabbed for DNA. The sweatshirt was sent for gunshot residue testing. N.T. at 38-61.

Officer Mark Wilusz, from the Philadelphia Firearms Identification Unit, testified that the three fired cartridge casings recovered from the crime scene were Blazer brass 9 millimeter Luger[] rounds. No weapon was recovered to provide additional ballistics. N.T. at 75-104.

Officer Stephen Berardi, from the Philadelphia Crime Scene Unit, testified that on September 15, 2017, he executed a search warrant on a red Geo with a Pennsylvania tag KLW 4359, registered and owned by Appellant. A search of the vehicle produced a blue duffel bag containing "a lot of cash," a mobile phone, two live .22 caliber rounds of ammunition, and a 50-count box containing 37 live Blazer brass 9 millimeter rounds. N.T. at 62-74.

Forensic Scientist 3, Gamal Emira, of the Philadelphia Police Department's Forensic and Trace lab, testified that he performed gunshot residue testing on the green hooded sweatshirt and found the presence of gunshot residue on the right cuff and right side of the green hooded sweatshirt. N.T. at 135-151.

Forensic Scientist 4, Benjamin Levin, of the Office of Forensic Science at the Philadelphia Police Department, Criminalistics Unit, DNA Laboratory, testified that he tested DNA recovered from a swab of the keys recovered in the alley. The DNA swab provided a partial profile and the major contributor was consistent with Appellant. Additionally, Mr. Levin testified that a piece of clothing related to the case was transferred from the laboratory responsible for gunshot residue trace testing to the queue for DNA testing, but had not yet been assigned an analyst. N.T. at 118-130.

Detective John Komorowski, from the Philadelphia Police Department's Homicide Unit, testified that he obtained a warrant[] for Appellant's Facebook user account…. A photo contained on that Facebook page depicted Appellant wearing a green hooded sweatshirt with a "PUMA" logo on it.[] N.T. at 153-171.

Dr. Lindsay Simon, an associate medical examiner for the City of Philadelphia, testified that she performed an autopsy on the decedent on September 12, 2017. The decedent was shot four times. The fatal shot traveled through the decedent's right lung and perforated his jugular vein. N.T., 11/27/18, at 103-119.

Appellant gave a video and audio recorded statement to Detective John Komorowski on October 4, 2017, admitting to shooting the decedent, stating he did so after the decedent threatened him. In the course of his statement, during which he insisted that he shot the decedent once, he stated "I walked behind him and he was like "why you following me, like it's cool I got something for you.' I was like 'damn, fuck it. I am in a bad situation. I ain't have no other choice.' Appellant denied knowing of the location of the gun, which was never recovered.[]

Trial Court Opinion, 1/6/20, at 1-6.

On appeal, Appellant raises the following questions for our review:

1. Did the lower court err in failing to grant Appellant's request for a continuance so that potentially exculpatory DNA testing on the green hooded sweatshirt placed on property receipt no. 9022269 could be completed?

2. Did the lower court err in failing to grant Appellant's request pursuant to 42 Pa.C.S. § 9543.1 for potentially exculpatory post-conviction DNA testing on the green hooded sweatshirt placed on property receipt no. 9022269?

Appellant's brief, at 3.

The grant of a continuance is discretionary and a refusal to grant is reversible error only if prejudice or a palpable and manifest abuse of discretion is demonstrated. *Commonwealth v. Williams*, 640 A.2d 1251, 1259 (Pa. 1994). An abuse of discretion "is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Commonwealth v. Poplawski*, 130 A.3d 697, 718 (Pa. 2015).

An accused has a fundamental right to present evidence so long as the evidence is relevant and not excluded by an established evidentiary rule. *Commonwealth v. Ward*, 605 A.2d 796, 797 (Pa. 1992). It is well established that evidence which demonstrates that the crime was committed by someone else is admissible. *Id.* The reviewing court should examine the nature of the crime and the surrounding circumstances to determine if the denial of a continuance was an abuse of discretion. *Commonwealth v. Chamberlain*, 731 A.2d 593, 597 (Pa. 1999).

In *Chamberlain*, the defendant was convicted on two counts of murder in the first degree for shooting to death his estranged wife and her boyfriend in their residence in the early morning hours. Just moments before dying, Ms. Chamberlain managed to phone a neighbor and asked her to call an

ambulance because "Terry [Appellant] shot Greg and me." *Id*. at 598. Three minutes after the phone call, the neighbors discovered the bodies of the deceased.

Based on this evidence, the defendant was charged as noted. No eyewitnesses and no physical evidence linked the defendant to the crime. No DNA testing was done on the blood samples to determine whether another person was involved. The only asserted link was the neighbor's quote of Ms. Chamberlain's final words to her, which the trial court ruled, over defense objection, would be admissible at trial as either an excited utterance or a dying declaration. *Id*.

One month before the trial was scheduled to begin, defense counsel informed the court that he had not received a number of requested discovery items, including the results of DNA testing. The Commonwealth denied requesting DNA testing, but the defense produced a written request by the Commonwealth for laboratory analysis on items obtained from Ms. Chamberlain's residence. One test was "for blood, type of blood and DNA."

The defense requested the blood samples so that it could conduct its own DNA testing and moved for a six week continuance to allow for testing. The Commonwealth informed the defense that the samples sent to the laboratory were probably destroyed but that the bloody clothes remained. The trial court refused to grant the continuance, and the remaining blood samples were not delivered to the defense despite repeated requests.

Under the circumstances, the Supreme Court determined that the trial court abused its discretion when it denied the defense request for a continuance:

> Based on the circumstances of this case, the trial court abused its discretion in denying the motion for a continuance. The record supports the claim that the defense: relied on the Commonwealth's request for DNA analysis; was informed for the first time at the April 25 conference that the Commonwealth had not conducted DNA testing; and was never given an opportunity to conduct its own testing. **The defense reasonably argued that DNA testing might reveal that someone other than appellant was at the scene and committed the murders**. Without the results of the testing, however, the defense is unable to demonstrate prejudicial error.[] On the facts of this case, given the capital charges and the potential death penalty, and given that no opportunity to conduct testing on the available blood samples was given, the trial court abused its discretion in denying the motion for a continuance.

*Id.* at 599 (emphasis added).

In contrast, the circumstances of the case *sub judice* do not include a reasonable argument advanced by the defense that someone other than he committed the murder in question. Whereas ***Chamberlain*** was marked by limited evidence implicating the defendant, such that the presence of another person's DNA in the decedent's bedroom could have created reasonable doubt in the Commonwealth's case, in the present case, overwhelming evidence pointed to Appellant's guilt.

Specifically, at the time the trial court denied Appellant's motion for a continuance, the admissible evidence collected against Appellant included: his own confession to shooting the decedent; an eyewitness's sworn statement to

police identifying Appellant as the shooter; a witness who testified he saw Appellant wearing the green "PUMA" hooded sweatshirt the day before the shooting, and who identified Appellant as the man depicted on an in-store video wearing the same sweatshirt minutes before the shooting; a compilation of surveillance videos depicting a male in the green sweatshirt shooting the decedent and running in an alley where investigators would later retrieve the sweatshirt and a set of keys, subject each to testing, and find gunshot residue on the sweatshirt and Appellant's DNA on the keys; a police report that a search of Appellant's car uncovered the same type of ammunition as was used in the murder; and a police report that an investigation of Appellant's Facebook page revealed a photo of him in a green hooded sweatshirt with a "PUMA" logo on it.

When viewed in the context of such highly incriminating cumulative evidence, the absence of Appellant's DNA—or even the presence of another's—on the green sweatshirt would not have been exculpatory, for it would fail to demonstrate a reasonable possibility that someone else could have committed the murder in question.

Accordingly, we discern no abuse of discretion in the court's denial of Appellant's motion for a continuance for DNA testing.

For essentially the same reason, Appellant's second issue, in which he claims the court erred in failing to grant his post-sentence request for testing

under the post-conviction DNA testing statute,[1] also fails.  The post-conviction

DNA testing statute permits "[a]n individual convicted of a criminal offense in

a court of this Commonwealth" to apply by "written motion to the sentencing

court at any time for the performance of forensic DNA testing on specific

---

[1] We note that Section 9543.1(a)(1) and (2) sets forth threshold requirements, as follows:

   (1)   An individual convicted of a criminal offense in a court of this Commonwealth may apply by making a written motion to the sentencing court at any time for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction

   (2)   The evidence may have been discovered either prior to or after the applicant's conviction.  The evidence shall be available for testing as of the date of the motion.  If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the evidence was subject to the testing, but newer technology could provide substantially more accurate and substantially probative results, *or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency*.

42 Pa.C.S.A. § 9543.1(a)(1) and (2) (emphasis added).

Even assuming, *arguendo*, that Appellant essentially met the last of these requirements when the court refused to grant Appellant's pretrial motion for a continuance to allow him to pursue DNA testing when it was discovered the Commonwealth did not conduct such testing as it said it would, we find Appellant's motion still failed to present a *prima facie* case demonstrating that exculpatory DNA testing results would establish his actual innocence.  **See** *infra*.

evidence that is related to the investigation or prosecution that resulted in the judgment of conviction." 42 Pa.C.S. § 9543.1(a)(1). "DNA testing may be sought at any time if the motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice." 42 Pa.C.S. § 9543.1(a)(4).

The statute further provides:

**(c) Requirements.--**In any motion under subsection (a), under penalty of perjury, the applicant shall:

\*\*\*

   (3) present a *prima facie* case demonstrating that the:

   (i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

   (ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:

   (A) the applicant's actual innocence of the offense for which the applicant was convicted[.]
\*\*\*

**(d) Order.--**

\*\*\*

   (2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:

> (i) would establish the applicant's actual innocence of the offense for which the applicant was convicted[.]

42 Pa.C.S. § 9543.1(c)(3)(ii) and (d)(2)(1).

> "[O]n its face, the *prima facie* requirement set forth in § 9543.1(c)(3) and reinforced in § 9543.1(d)(2) requires that an appellant demonstrate that there is a reasonable possibility[ ] that favorable results of the requested DNA testing would establish the appellant's actual innocence of the crime of conviction." [**Commonwealth v.**] **Conway**, 14 A.3d [101,] 109 [(Pa. Super. 2011)] (internal quotation marks omitted). In order for new evidence resulting from DNA testing to establish "actual innocence," it "must make it 'more likely than not that no reasonable juror would have found [the appellant] guilty beyond a reasonable doubt.' Thus, this standard requires a reviewing court 'to make a probabilistic determination about what reasonable, properly instructed jurors would do,' if presented with the new evidence." **Id.** (quoting **Schlup v. Delo**, 513 U.S. 298, 327, 329 (1995)). Accordingly, the PCRA court must "review not only the motion [for DNA testing], but also the trial record, and then make a determination as to whether there is a reasonable possibility that DNA testing would produce exculpatory evidence that would establish ... actual innocence."

**Commonwealth v. Williams**, 35 A.3d 44, 50 (Pa. Super. 2011) (quoting

**Commonwealth v. Smith**, 889 A.2d 582, 584 (Pa. Super. 2005)).

As discussed, the trial court viewed Appellant's post-sentence motion in light of a trial record comprising multiple sources, such as eyewitnesses, surveillance video, and Appellant, himself, offering his own voluntary confession, supplying direct identification evidence implicating Appellant as the decedent's shooter.

Moreover, substantial circumstantial evidence corroborated such accounts. Appellant's motion thus failed to demonstrate a reasonable possibility that DNA evidence would establish his actual innocence.

Accordingly, we find no abuse of discretion in the denial of Appellant's post-sentence motion for post-conviction testing.

For the foregoing reasons, we affirm judgment of sentence.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/4/20